IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00918-LTB-MEH

EUGENE EDWARDS,

      Plaintiff,

v.

ARISTEDES W. ZAVARAS, as Executive Director of DOC, in his Individual and Official
Capacit[ies],

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendant's Motion to Dismiss [filed July 1, 2011; docket #20].  The

motion has been referred to this Court for recommendation [docket #22].  The motion is fully

briefed, and the Court finds oral argument would not materially assist in adjudicating the motion.

For the reasons that follow, the Court respectfully recommends that Defendant's motion be

**granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and
file any written objections in order to obtain reconsideration by the District Judge to whom this
case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those
findings or recommendations to which the objections are being made.  The District Court need
not consider frivolous, conclusive or general objections.  A party's failure to file such written
objections to proposed findings and recommendations contained in this report may bar the party
from a *de novo* determination by the District Judge of the proposed findings and
recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. §
636(b)(1).  Additionally, the failure to file written objections to the proposed findings and
recommendations within fourteen (14) days after being served with a copy may bar the
aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or
adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United
States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164

## BACKGROUND

Plaintiff is a prisoner in Colorado proceeding *pro se* who initiated this civil rights action on April 6, 2011by filing the Complaint that is the operative pleading in this matter.  Plaintiff alleges generally that Defendant has denied him access to mandatory sex offender treatment in violation of the Fourteenth Amendment.  *See* Complaint, docket #1, at 3.  Plaintiff seeks declaratory relief, as well as nominal, compensatory and punitive damages against the Defendant.  *Id.* at 11.

### I.   Facts

The following are factual allegations made by the Plaintiff in his Complaint with respect to claims brought against the Defendant.  These allegations are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

The Plaintiff was sentenced on February 2, 2007 to serve 8-1/2 years imprisonment with the Colorado Department of Corrections (CDOC) after pleading guilty to a charge of Distribution of a Controlled Substance.

In the CDOC, the Sex Offender Treatment and Monitoring Program (SOTMP) administers treatment to eligible prisoners.  The SOTMP is operated by the CDOC and governed by Administrative Regulation (AR) 700-19, which establishes the scope and limit of treatment for eligible prisoners.  Defendant Zavares, as the Executive Director of the CDOC, was at all times relevant to the Complaint responsible for developing policies and procedures governing the operations of the CDOC, including the approval and application of the SOTMP.

In June 2007, Plaintiff received an Administrative Review/Due Process hearing to determine whether a recommendation for treatment in the SOTMP would be proper.  The Administrative

---

(10th Cir. 1986).

Review Panel determined that Plaintiff had behaved in such a manner as to warrant a recommendation for SOTMP placement and treatment.

On April 1, 2009, Defendant issued revisions to AR 700-19, which give priority for placement into the SOTMP to inmates having Lifetime Supervision (indeterminate) sentences. Plaintiff, who has a determinate sentence and who apparently had been awaiting placement since the June 2007 recommendation, filed a grievance on August 10, 2009, seeking immediate placement into the SOTMP. Plaintiff alleges that, other than the nature of their sentences, there is nothing to distinguish between the necessity of sex offender treatment for determinately sentenced sex offenders and indeterminately sentenced sex offenders.

Plaintiff has been denied access to treatment in the SOTMP. The Colorado Sex Offender Management Board (SOMB) describes untreated sex offenders as "dangerous" and "incurable," and recognizes they are always at risk to re-offend. According to the Plaintiff, then, considering that determinately sentenced sex offenders are guaranteed to be released into the community and indeterminately sentenced sex offenders are not, there is no rational justification for prioritizing treatment for the latter rather than the former.

The Plaintiff also claims that, because they are not prioritized, determinately sentenced sex offenders would be exposed to an unnecessary increase in the length of time they will serve in prison.

Plaintiff claims that Defendant's promulgation and approval of the revisions to AR 700-19 violate his rights to equal protection under the Fourteenth Amendment. In addition, Plaintiff alleges a due process claim for having to wait to gain access to the SOTMP. Plaintiff asserts that, when the Administrative Review Panel recommended he receive treatment, he became a sex offender under

the CDOC's classification and was entitled to the same treatment as all other sex offenders.

## II.      Procedural History

On July 1, 2011, Defendant filed the present Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) arguing that he is immune from liability in his official capacity, that Plaintiff failed to demonstrate Defendant's personal participation in the alleged violations, and that Defendant is entitled to qualified immunity because Plaintiff's allegations fail to state Fourteenth Amendment claims.  With respect to the latter, Defendant contends that because Plaintiff was not sentenced under Colorado's Sex Offender Lifetime Supervision Act (SOLSA), he is not statutorily mandated to undergo treatment under the SOTMP and, thus, he cannot state a liberty interest.  Further, Defendant contends that Plaintiff's claim of an increased sentence is not viable, and Plaintiff is barred from making claims on behalf of other inmates.

Plaintiff responded to the motion on September 12, 2011.  Primarily, Plaintiff argues that Defendant is liable for damages in his official capacity pursuant to *Ex Parte Young*, 209 U.S. 123 (1908); Defendant promulgated and signed the revised AR 700-19, so has personally participated in the constitutional violation; Plaintiff is similarly situated to other inmates on the waiting list for the SOTMP; and Plaintiff states a liberty interest sufficient for due process protection.

Defendant filed no reply brief in support of his motion.

## LEGAL STANDARDS

## I.      Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the

merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted).

## II.     Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

### III.   Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188,

1197 (10th Cir. 1989)).

## **DISCUSSION**

Construing the Complaint liberally as I must, the Court finds that Plaintiff alleges three potential claims for relief: (1) an equal protection claim for Defendant's promulgation of revisions to a policy that give allegedly similarly situated inmates a "priority status" on the wait list, but do not provide priority for the Plaintiff; (2) an equal protection claim for Defendant's promulgation of revisions to a policy that give allegedly similarly situated inmates "priority (or, "faster") access" to the SOTMP, but do not provide priority for the Plaintiff; and (3) a due process claim for Defendant's failure to place the Plaintiff in the SOTMP after several years of waiting.[2]

## I.      **Rule 12(b)(1) Defense**

The present motion raises no defenses pursuant to Fed. R. Civ. P. 12(b)(1); however, the Court may, on its own, address questions pertaining to its subject matter jurisdiction. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1240 (10th Cir. 2001) ("[s]o long as a case is pending, the issue of federal court jurisdiction may be raised at any stage of the proceedings either by the parties or by the court on its own motion.") (citation omitted).  Such questions may be addressed pursuant to Fed. R. Civ. P. 12(b)(1).

Standing is an essential component of the court's subject matter jurisdiction. *Habecker v.*

---

[2]Neither the Complaint nor the Motion actually mention a "due process" claim; however, the Plaintiff's allegations and the content of the briefing lead this Court to construe the Complaint as alleging a due process claim.  Moreover, the Plaintiff's case is governed by the Prison Litigation Reform Act (PLRA).  Thus, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court "shall dismiss the case at any time if the court determines that" the action "fails to state a claim on which relief may be granted." *See Elliott v. Cummings*, 49 F. App'x 220, 224 (10th Cir. 2002) (unpublished) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

*Town of Estes Park*, 518 F.3d 1217, 1223 (10th Cir. 2008).  The party asserting the existence of subject matter jurisdiction bears the burden of proving such jurisdiction exists, including the burden of demonstrating adequate standing.  *Id.*  Thus, standing requires a plaintiff to allege, and ultimately prove, (1) he has suffered a concrete injury in fact; (2) a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant; and (3) the plaintiff's injury likely will be remedied by the relief requested.  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008).  "The alleged injury must be concrete and particularized and imminent or actual, as opposed to conjectural or hypothetical."  *Roe No. 2 v. Ogden,* 253 F.3d 1225, 1229 (10th Cir. 2001) (citing *Vermont Agency of Natural Res. v. United States ex. rel. Stevens,* 529 U.S. 765, 771 (2000)).

Although Plaintiff fails to cite specifically to the particular revision he challenges for his equal protection claim, the Court notes that AR 700-19(IV)(E)(1) concerns prioritization of offenders for treatment in the SOTMP and reads, in pertinent part:

> To the extent resources permit, offenders may be prioritized for treatment based upon, but not limited to, sentence type, parole eligibility date, appropriate institutional behavior and placement, and prior SOTMP treatment opportunities. Due to limited resources, offenders should be placed in treatment according to the following guidelines in priority order:
>
> a.     Lifetime supervision sentenced offenders that are within four years of their parole eligibility date.
>
> b.     Traditional determinate sentenced offenders with active judicial determinations of a sex crime that are within four years of their parole eligibility date.
>
> c.     Offenders with unadjudicated sex abuse allegations that were classified as a sex offender based upon an active DOC sentence that is within four years of their parole eligibility date.
>
> d.     Offenders evaluated as having a continuing treatment need, with sexual

violence needs classification of S5, S4, or S3 based upon inactive sentences.

e.      Offenders with unadjudicated sex abuse allegation(s) that require the classification review process.

Offenders that have not had an opportunity to participate in treatment will have priority over an offender that has had an opportunity and did not take advantage of that opportunity. These offenders may not be placed back upon a waiting list until a prescribed amount of time has passed.

SOTMP may initiate exceptions to these guidelines based on the severity of the identified treatment needs or other considerations.

AR 700-19(E)(1) (2011), docket #20-1 at 4.

In this case, it is unclear whether Plaintiff claims he has been denied "priority status" on the waiting list or "priority (or, "faster") access" to the SOTMP or both; in any case, the allegations may be construed as two different claims. Thus, to the extent that Plaintiff alleges he, as an inmate with a determinate sentence, is treated differently than inmates with indeterminate sentences because they are given "priority status" on the wait list for sex offender treatment and he is not, the Plaintiff admits in his response brief that he is on "Priority" status (docket #30 at 5) and Warden Timme reminded him in August 2010 that he "remain[s] recommended for and [is] *priority* for treatment." Exhibit 1, August 2, 2010 Memorandum from Timme to Edwards, docket #30 at 28 (emphasis added).[3] Even if the Plaintiff were complaining that other inmates were given priority status before it was given him, he identifies no injury as a result, and such complaint has been made moot by the fact that he is now on priority status. Accordingly, the Plaintiff cannot show he suffers a concrete injury in fact for his equal protection claim, to the extent he complains he has been denied priority status, and for the declaratory relief he seeks – *i.e.*, a declaration that "the Defendant's policy of

---

[3] When analyzing a factual attack on subject matter jurisdiction, the Court may consider evidence and documents outside the pleadings. *See Holt*, 46 F.3d at 1003.

*prioritizing* sex offender treatment which limits access to determinately sentenced sex offenders is a violation of the Plaintiff's right to Equal Protection." *See* docket #1 at 11 (emphasis added). Without a showing of standing, the Court lacks subject matter jurisdiction over the claim; therefore, this Court respectfully recommends that Plaintiff's equal protection claim, construed to allege denial of priority status, be dismissed for lack of jurisdiction.

**II.     Rule 12(b)(6) Defenses**

In the present motion brought pursuant to Fed. R. Civ. P. 12(b)(6), Defendant argues that he is entitled to both Eleventh Amendment and qualified immunities, and that Plaintiff has failed to allege Defendant's personal participation in the challenged conduct. The Court will analyze each stated defense in turn.

**A.     Eleventh Amendment Immunity**

Defendant contends that the Eleventh Amendment precludes this Court from hearing Plaintiff's claims to the extent they are brought against Defendant in his official capacity.[4]

Claims against state officials in their official capacities are essentially claims against the state entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett,* 17 F.3d 1263,

---

[4]The Court notes that Defendant raises this defense pursuant to Fed. R. Civ. P. 12(b)(6); however, the defense is properly raised under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and this Court will analyze it as such. *See Fent v. Oklahoma Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (the Eleventh Amendment "constitutes a bar to the exercise of federal subject matter jurisdiction.").

1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991); *see also Hunt v. Colo. Dep't of Corrs.,* 271 F. App'x 778 (10th Cir. 2008) (CDOC is an agency of the State of Colorado that has not expressly waived its sovereign immunity from Section 1983 claims). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. University of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff names Defendant in both his individual and official capacities, and seeks "nominal, compensatory and punitive damages in the amount of $100,000.00 against the Defendant." *See* docket #1 at 11. Thus, any claim by the Plaintiff for money damages against the Defendant in his official capacity is barred by the Eleventh Amendment. However, the Plaintiff also seeks a declaration that "Defendant's policy of prioritizing sex offender treatment which limits access to determinately sentenced sex offenders is a violation of the Plaintiff's right to Equal Protection." *Id.* In addition, the Plaintiff requests prospective injunctive relief, asking the Court to "[i]mmediately arrange for Plaintiff ... access to mandatory treatment through the CDOC's

SOTMP." *Id.* To the extent the Plaintiff has standing to seek such relief and states plausible equal

protection and/or due process claims, the requested declaratory and injunctive relief fall within the

*Young* exception to Eleventh Amendment immunity. *See, e.g., Buchwald*, 159 F.3d at 496 (where

plaintiff alleged continued exclusion from medical school violated her constitutional rights, she

stated a proper claim against defendants in their official capacities seeking a prospective injunction

ordering her admission to the medical school). Accordingly, Plaintiff's claims for prospective

declaratory and injunctive relief against the Defendant in his official capacity may proceed, as long

as the Plaintiff states plausible claims for equal protection and/or due process violations.

  B. <u>Qualified Immunity</u>

  The Defendant asserts he is entitled to qualified immunity on Plaintiff's claims against him

in his individual capacity, because the Plaintiff has failed to allege plausibly that he personally

participated in the challenged conduct and has failed to state plausible claims for Fourteenth

Amendment violations.

  Qualified immunity protects from litigation a public official whose possible violation of a

plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow

v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other

burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations

and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability.

*Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to

overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The

plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or

statutory rights, and that the right was clearly established at the time of the alleged unlawful

activity." *Id.* (citing *Pearson v. Callahan*, – U.S. –, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson,* 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for each claim alleged against the Defendant, the Court will examine first whether the Plaintiff has alleged sufficient facts to demonstrate that the Defendant participated in the alleged violations of his constitutional rights and, if so, whether Plaintiff states plausible constitutional violations. If the Plaintiff states plausible violations, the Court will proceed with an analysis of whether the Plaintiff's rights were clearly established at the time of the alleged violations.

    1.    Due Process Claim

Defendant contends both that Plaintiff has not sufficiently stated Defendant's personal participation in the alleged due process violation and that Plaintiff has stated no liberty interest necessary to assert a due process violation.

        a.    Personal Participation

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, the Plaintiff must show that the Defendant caused the deprivation of a federal right. *See Graham,* 473 U.S. at 166. There must be an affirmative link between the alleged constitutional violation and each defendant's

participation, control or direction, or failure to supervise. *See Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993). A defendant may not be held liable on a theory of respondeat superior. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986); *McKee v. Heggy,* 703 F.2d 479, 483 (10th Cir. 1983).

In other words, a defendant may not be held liable merely because of his or her supervisory position. *See Kite v. Kelley,* 546 F.2d 334, 337-38 (10th Cir. 1976) (holding that a federal officer may not be held monetarily liable for acts of his subordinates resulting in the deprivation of constitutional rights). To establish individual supervisory liability, a plaintiff must establish a "deliberate, intentional act" by a supervisor such that there is a "sufficient causal connection" between the supervisor and the constitutional violation. *Serna v. Colo. Dep't of Corrs.,* 455 F.3d 1146, 1151 (10th Cir. 2006). Mere negligence is not sufficient to establish liability. *Id.* Rather, a plaintiff must show active participation or acquiescence through personal participation, exercise of control or direction, failure to supervise, or tacit authorization of the offending acts. *Id.* at 1152-53. Thus, if a warden is responsible for proper management of a jail, the warden may be accountable if he "knew or should have known of the misconduct, and yet failed to prevent future harm." *See Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir. 1988) (citations omitted).

Here, Defendant contends that "the link between Zavares' alleged actions and the alleged harm to Edwards is too tenuous to establish personal participation." Motion, docket #20 at 5. The Plaintiff mentions nothing about whether the Defendant himself, as Executive Director of the CDOC, is responsible for keeping Plaintiff on the waiting list or moving him from the waiting list to actual entry into the SOTMP. Again, a defendant may not be held monetarily liable merely because of his supervisory position. *See Kite,* 546 F.2d at 337-38. However, Plaintiff alleges that

14

Defendant "knew or reasonably should have known that Plaintiff, like other determinately sentenced sex offenders[,] would be exposed to an unnecessary increase in the length of time they will serve in prison." Docket #1 at 9. Taking this allegation concerning the Plaintiff as true[5] and to the extent Defendant has the ability to order an inmate's immediate access to the SOTMP, it is possible the allegation may be sufficient to state personal participation by the Defendant. Therefore, the Court will proceed with an analysis as to whether Plaintiff states a liberty interest.

b.      Liberty Interest

A plaintiff alleging denial of due process under the Fourteenth Amendment must state the deprivation of a liberty or property interest. *See Greenholz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).

Defendant argues that Plaintiff "has no liberty interest in access to the SOTMP," because he "was not sentenced under the SOLSA and is therefore not mandated to undergo sex offender treatment as part of his sentence." Motion, docket #20 at 6. Plaintiff counters that he has a liberty interest in "not being branded a sex offender arbitrarily." Response, docket #30 at 11.[6]

The Court agrees with the Defendant. First, while Plaintiff's assertion of a liberty interest may arguably relate to a claim challenging a classification of "sex offender," the interest does not relate to Plaintiff's claim that he has been denied access to the SOTMP. Second, the Tenth Circuit has held that a prisoner who was not convicted under the 1998 version of the SOLSA, which

---

[5]Pro se prisoner plaintiffs may not bring claims on behalf of other prisoners. *Tijerina v. Offender Mgmt. Review Comm.*, 91 F. App'x 86, 88 (10th Cir. 2004) (unpublished) (citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)). Therefore, to the extent Plaintiff's Complaint may be read to allege claims on behalf of other prison inmates, the Court recommends that such claims be dismissed.

[6]Neither party argues the existence or non-existence of a property interest in this case.

*requires* sex offender treatment, did not have a liberty interest in access to the SOTMP.  *See Helm v. Colorado*, 244 F. App'x 856, 859 (10th Cir. 2007) (unpublished).  Likewise, here, it is undisputed that Plaintiff not only was *not* convicted under the 1998 version of the SOLSA, but he was not convicted under the SOLSA at all.  According to the Plaintiff, he was convicted for Distribution of a Controlled Substance pursuant to Colo. Rev. Stat. § 18-18-405.  Therefore, there is no indication that Plaintiff's placement in and treatment under the SOTMP is mandatory.  Once he was committed to the CDOC, Plaintiff underwent a Sexual Violence Needs (SVN) Classification Review, and was classified as a "sex offender." Complaint, docket #1 at 3.  Thereafter, Plaintiff participated in a hearing before an Administrative Review Panel, which recommended that Plaintiff be placed and treated in the SOTMP.  *Id.* at 6.  At this point, the CDOC's decision as to where and how to place Plaintiff within the system was a matter of discretion.  *See Helm*, 244 F. App'x at 858.

The Plaintiff identifies no other source providing him a liberty interest in participation in the SOTMP.  As such, the Court finds that Plaintiff has failed to state a liberty interest necessary to establish a plausible procedural due process claim, and the Defendant is entitled to qualified immunity as to this claim.  Accordingly, the Court recommends that the District Court **grant** Defendant's motion to dismiss Plaintiff's due process claim.

### 2.      Equal Protection Claim

Defendant, apparently construing Plaintiff's claim as a denial of priority, or "faster," access to the SOTMP, contends that Plaintiff has failed to state Defendant's personal participation and that Plaintiff is not similarly situated to inmates sentenced under the SOLSA.

### a.      Personal Participation

Plaintiff alleges that Defendant was (at all times relevant) "responsible ... for developing

policies and procedures governing the operations of the CDOC including the approval and application of the SOTMP." Complaint, ¶ 6, docket #1. More specifically, Plaintiff claims the Defendant "promulgated AR 700-19 with revisions which redefined it's [sic] policy for those whom are await[ing] participation into it's [sic] SOTMP, thereby requiring those offenders with Lifetime Supervision sentences be made a priority on the treatment list." *Id.*, ¶ 9. Plaintiff also claims that Defendant's policy of prioritizing treatment for indeterminately sentenced sex offenders is "void of any rational justification." *Id.*, ¶ 19.

Defendant argues that Plaintiff states no facts supporting knowledge on the part of Defendant that a constitutional violation would occur against Plaintiff with the promulgation of the revisions to AR 700-19. The Court disagrees. Plaintiff's allegations may be liberally construed as a challenge to the constitutionality of the revisions to AR 700-19. As the Executive Director of the CDOC implementing these revisions, Defendant may be sued in his official capacity for a claim that seeks declaratory and prospective injunctive relief for the enforcement and/or implementation of an alleged unconstitutional policy. *See Ex parte Young,* 209 U.S. at 159-60 (officials, named as defendants in a suit to enjoin the enforcement of an allegedly unconstitutional law, must by virtue of their offices have some connection with the enforcement of the law); *see also New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996) ("when a plaintiff seeks a declaration that a particular statute is unconstitutional, the proper defendants are the government officials charged with administering and enforcing it").

Moreover, the Defendant may be sued in his individual capacity for implementing policies alleged to have violated the Fourteenth Amendment. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Fogarty v. Gallegos*, 523

F.3d 1147, 1162 (10th Cir. 2008) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)). In situations where an "affirmative link" exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise, the supervisor may be personally liable. *Id.* (citing *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)). The establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's "affirmative link" to the constitutional violation. *Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1263 (D. Colo. 2010) (citing *Meade*, 841 F.2d at 1528). "Therefore, where an official with policymaking authority creates, actively endorses, or implements a policy which is constitutionally infirm, that official may face personal liability for the violations which result from the policy's application." *Id.*; *see also Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) ("[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue") (citations omitted).

Based on the foregoing and taking the Plaintiff's allegations as true, the Court finds that Plaintiff has stated a plausible claim that Defendant personally participated in the promulgation of an allegedly unconstitutional policy. Therefore, the Court will proceed with an analysis of whether Plaintiff has plausibly stated he was similarly situated to inmates treated differently.

b.      Similarly Situated

Defendant contends that the Plaintiff is not similarly situated to inmates receiving priority access to the SOTMP pursuant to AR700-19 because Plaintiff's sentence for his drug distribution conviction and his ability to be considered for parole are not inextricably linked to sex offender treatment, as they are for CDOC inmates sentenced under the SOLSA. Motion, docket #20 at 6-7.

Plaintiff counters that he was "forced" into being similarly situated by the classification of "sex offender" imposed by the CDOC Administration in June 2007 and, as such, it is "mandatory" he undergo treatment pursuant to Colo. Rev. Stat. § 16-11.7-105.[7]  Response, docket #30 at 9-10 ("Section 16-11.7-105 promises rehabilitative sex offender treatment for every CDOC prisoner sentenced on a sex offense conviction, without regard to the nature of a prisoner[']s sentence.").

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, § 1.  This clause prohibits the government from treating similarly situated individuals differently.  *See City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).  Here, the Plaintiff does not assert that his different treatment is based on any suspect classification; thus, Plaintiff must show that (1) he is similarly situated to other inmates who were treated differently and (2) the difference in treatment bears no rational relation to legitimate penological interests.  *Fogle v. Pierson,* 435 F.3d 1252, 1261 (10th Cir. 2006).

Defendant claims that Plaintiff is not similarly situated to inmates receiving priority access to the SOTMP because he was not sentenced under the SOLSA and, thus, his treatment is not mandatory as it is for those given priority access.  Plaintiff counters that his treatment *is* mandatory pursuant to Colo. Rev. Stat. § 16-11.7-105.  The Court disagrees; as set forth by the Defendant, the treatment provided pursuant to Section 16-11.7-105 is required *only* for inmates sentenced under the SOLSA.  *See* Colo. Rev. Stat. § 18-1.3-1004(3) (2011).  Plaintiff identifies no other source

---

[7]The Plaintiff also notes that the "sex offender" determination was "arbitrary" and that he was allegedly forced to sign a "SOTMP Contract ... under duress."  Response, docket #30 at 8. However, Plaintiff's claims raised in the present action do not concern his classification status and, therefore, the Court will disregard any purportedly related arguments.

identifying treatment as "mandatory" for an inmate in his circumstances - i.e., an administratively determined sex offender. *See* AR 700-19(III)(A), docket #20-1. Therefore, Plaintiff's allegations do not plausibly state that he is similarly situated to inmates receiving priority access to the SOTMP.

Moreover, the Court finds that the difference in treatment - that is, prioritizing treatment for inmates sentenced under the SOLSA - is rationally related to a legitimate penological interest of following state law and providing access to the SOTMP to those for whom treatment is mandatory. Consequently, the Defendant is entitled to qualified immunity for Plaintiff's failure to state a plausible equal protection claim. As such, this Court recommends that the District Court **grant** the motion to dismiss Plaintiff's equal protection claim.

## CONCLUSION

Plaintiff alleges three potential claims for relief: (1) an equal protection claim for Defendant's promulgation of revisions to a policy that give allegedly similarly situated inmates a "priority status" on the wait list, but do not provide priority for the Plaintiff; (2) an equal protection claim for Defendant's promulgation of revisions to a policy that give allegedly similarly situated inmates "priority (or, "faster") access" to the SOTMP, but do not provide priority for the Plaintiff; and (3) a due process claim for Defendant's failure to place the Plaintiff in the SOTMP after several years of waiting. This Court recommends finding that Plaintiff lacks standing to bring the first claim and, thus, this Court lacks subject matter jurisdiction over the claim. With respect to the second and third claims, this Court recommends finding that Plaintiff has failed to state plausible claims under the Fourteenth Amendment for violations of due process and equal protection, and that Defendant is, therefore, entitled to qualified immunity on the second and third claims. Accordingly, the Court RECOMMENDS that the District Court **dismiss** Plaintiff's first claim for lack of subject matter

jurisdiction and **grant** the Defendant's Motion to Dismiss [filed July 1, 2011; docket #20] Plaintiff's second and third claims.

Respectfully submitted at Denver, Colorado, this 19th day of October, 2011.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

21